[No. 6728–1.   Division One.   October 22, 1979.]

SEATTLE NEWSPAPER–WEB PRESSMEN'S UNION LOCAL
No. 26, *Appellant*, v. THE CITY OF SEATTLE,
*Respondent*.

*Hafer, Cassidy & Price* and *John E. Rinehart, Jr.,* for appellant.

464

*Slade Gorton, Attorney General, Morton M. Tytler, Assistant, Douglas N. Jewett, City Attorney,* and *Elizabeth A. Huneke, Assistant,* for respondent.

RINGOLD, J.—The plaintiff, Seattle Newspaper–Web Pressmen's Union Local 26 (Local 26), filed this action for a declaratory judgment and permanent injunction challenging the constitutionality of the Seattle Fair Employment Practices Ordinance (Ordinance). The City filed its answer affirmatively alleging that the plaintiff's complaint failed to state a claim for which relief can be granted and challenging the jurisdiction of the court to determine the action.

Pursuant to RCW 7.24.110 the Attorney General also filed his appearance on behalf of the State of Washington. Upon a motion for summary judgment by Local 26 and for judgment on the pleadings the trial court denied Local 26's motion for summary judgment and dismissed its cause of action with prejudice. We agree with the trial court and affirm.

Local 26 is a labor organization representing two members employed by the Seattle Post–Intelligencer. The two employees filed a complaint against the employer and against Local 26, charging them with racial discrimination. Following notice of the charges Local 26 and the representatives of the Seattle Human Rights Commission established pursuant to the Ordinance attempted to resolve the charges. The Seattle Human Rights Commission issued written interrogatories to Local 26 which it refused to answer. This action was then commenced, Local 26 contending that the Ordinance is preempted by the state law against discrimination (Statute), RCW 49.60 *et seq.* and that the Ordinance is ultra vires or beyond the police power of the City.

LEGISLATIVE INTENT

The test for determining whether state legislation

has preempted the enactment of local ordinances was enunciated in *Lenci v. Seattle,* 63 Wn.2d 664, 669–70, 388 P.2d 926 (1964) where the court held:

[T]he plenary police power in regulatory matters accorded municipalities by Const. Art. 11, § 11[1] ceases when the state enacts a general law upon the particular subject, unless there is room for concurrent jurisdiction. . . .

Whether there be room for the exercise of concurrent jurisdiction in a given instance necessarily depends upon the legislative intent to be derived from an analysis of the statute involved. . . . If the legislature is silent as to its intent to occupy a given field, resort must be had to the purposes of the legislative enactment and to the facts and circumstances upon which the enactment was intended to operate.

Our inquiry then is whether the legislature intended to preempt the field. In 1949 the legislature of the State of Washington enacted RCW 49.60 then entitled The Law Against Discrimination in Employment. The Statute was amended at several subsequent sessions of the legislature and at present prohibits discrimination in employment, real estate, credit and insurance transactions, and in places of public resort, accommodations or amusement. The Statute defines unfair employment practices, RCW 49.60.180–.190, and authorizes a state agency to prevent employment discrimination. RCW 49.60.050 *et seq.* The Statute also encourages the creation of local advisory boards and cooperative agreements with local governments that have enacted real estate discrimination ordinances. RCW 49.60-.226.

Seattle ordinance No. 102562 was initially enacted in 1973 and subsequently amended. The Ordinance defines

---

[1]Article 11, section 11 of the Washington State Constitution provides: "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws."

unfair employment practices within the City of Seattle and authorizes city agencies to prevent employment discrimination by private employers and labor organizations in the city and by the City of Seattle.

The plaintiff argues that in the Statute the legislature identified practices of discrimination "against any of its inhabitants" to be a "matter of state concern." RCW 49.60.010. The plaintiff urges the Statute with its numerous provisions is all inclusive and comprehensively covers the subject area; therefore, there is no room for concurrent jurisdiction. It further contends that in 1969 the legislature amended the Statute to permit the State Board Against Discrimination (Board) to enter into cooperative agreements with local governments administering ordinances with provisions similar to the real estate provisions of the law against discrimination. RCW 49.60.226. No express accommodation was made for local regulation of other areas of discrimination. Therefore, the plaintiff reasons the canon of construction "expressio unius est exclusio alterius," the specific designation of a thing covered by a statute creates an inference that all things omitted were excluded intentionally, should apply. Local 26 therefore contends that the Statute precludes local legislation in any other areas covered by the Statute.

The plaintiff misapplies the canon of construction. The amendment to RCW 49.60.226 to which Local 26 seeks to apply this maxim provides:

> [The] units of local government administering ordinances with provisions similar to the real estate provisions of the law against discrimination are authorized and directed to enter into cooperative agreements or arrangements for receiving and processing complaints so that duplication of functions shall be minimized and multiple hearings avoided.

The applicability of the maxim depends upon the syntax of the sentence to which its application is sought. As much as can be inferred by application of the maxim to the sentence above is that by authorizing and directing cooperative

agreements between the Board and local governmental units in the area of real estate discrimination, the legislature intended *not* to provide for cooperative agreements in other areas of discrimination which also might be covered by local enactments. Application of the maxim will not logically yield an inference excluding local legislation in other areas of discrimination.

The Statute not only directs cooperative agreements with local governments which have real estate discrimination ordinances, RCW 49.60.226, but also provides the Board with power to create local, regional or statewide advisory agencies and conciliation councils in order to effectuate the purposes of the Statute.

Section .020 authorizes any person whose civil rights have been violated to "pursue any civil or criminal remedy . . ." This language indicates legislative recognition that other means of redress than those in the state Statute should be available.

The fact that the Statute identifies discriminatory practices as a matter of state concern should not be read to mean that such practices cannot also be a matter of local concern. That policy statement serves only to legitimatize the exercise by the State of its constitutional police power rather than to delimit what localities can do in the exercise of their power.

The Board has encouraged the processing of complaints by the Seattle Human Rights Commission and other agencies of local government. In *Holland v. Boeing Co.*, 90 Wn.2d 384, 389, 583 P.2d 621 (1978) the court states the rule "the construction of the statute by those whose duty it is to administer its terms, is entitled to be given great weight." The Board has promulgated WAC 162–08–062 which provides that in pursuing a remedy an aggrieved claimant can sometimes proceed under a local ordinance. The Board thus interprets the Statute to permit local enactments.

In its most recent pronouncement on the subject of preemption the court held: "A statute will not be construed as

taking away the power of a municipality to legislate unless this intent is clearly and expressly stated." *State ex rel. Schillberg v. Everett Dist. Justice Ct.,* 92 Wn.2d 106, 108, 594 P.2d 448 (1979). There is no language in the Statute manifesting such clear and express intent.

Considering the Statute as a whole we conclude that its provisions were not intended to be exclusive. The Statute does not preempt the Seattle Ordinance.

## CONFLICT WITH STATE LAW

The plaintiff argues that the Ordinance exceeds the City's police power under the constitution as being in conflict with state law and is therefore unconstitutional.

Local 26 postulates two conflicts between the Ordinance and state law. First it posits an inconsistency arising under the definitions of unfair employment practices of labor organizations in the Statute and Ordinance. RCW 49.60.190 provides:

It is an unfair practice for any labor union or labor organization:

(1) To deny membership and full membership rights and privileges to any person because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap.

(2) To expel from membership any person because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap.

(3) To discriminate against any member, employer, or employee because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap.

Section 4(A)(5) of the Ordinance provides:

(A) It is an unfair employment practice within the City of Seattle for any—

. . .

(5) Labor organization to discriminate against any person by limiting, segregating, or classifying its membership in any way that would:

(a) deprive or tend to deprive any person of employment opportunities;
(b) limit any person's employment opportunities or otherwise adversely affect such person's status as an applicant for employment or as an employee;
(c) adversely affect the wages, hours, or conditions of employment of any person;

Local 26 reads the Statute as regulating only activities of labor organizations affecting one's membership status, while the Ordinance is broader because it is aimed at the effect of discrimination on "persons" brought about by labor organizations, "limiting, segregating, or classifying its membership. . . ."

■ We fail to see any conflict in this connection. If the areas of operation of the Statute and Ordinance are distinct there is no inconsistency. The rule for determining whether a conflict exists is stated in *Struthers v. Sokol,* 108 Ohio St. 263, 268, 140 N.E. 519, 521 (1923):

No real conflict can exist unless the ordinance declares something to be right which the state law declares to be wrong, or vice versa. There can be no conflict unless one authority grants a permit or license to do an act which is forbidden or prohibited by the other.

That test was expressly adopted by the Washington State Supreme Court in *Bellingham v. Schampera,* 57 Wn.2d 106, 111, 356 P.2d 292, 92 A.L.R.2d 192 (1960). The City does not attempt to authorize by this Ordinance what the legislature has forbidden, nor does it forbid what the legislature has licensed, authorized or required. An ordinance may be more restrictive than the state enactment so long as the statute does not forbid the more restrictive enactment. *Lenci v. Seattle, supra* at 670–71. The Seattle Ordinance does not attempt to authorize practices that have been forbidden by the state Statute. It merely provides further prohibition against unfair labor practices.

Local 26 also posits a conflict between the Ordinance and RCW 49.04.010 *et seq.*, the state law providing for apprenticeship training programs.[2] Section 4(A)(7) of the Ordinance defines an unfair employment practice as any discrimination by labor organizations or joint labor management apprenticeship committees "against any person with respect to admission to or participation in any guidance program, apprenticeship training program or other occupational training program." RCW 49.04 requires that all apprenticeship programs receiving state assistance admit minority persons in proportion to their representation in the population of the particular city or trade area. RCW 49.04.100. The plaintiff argues that compliance with the state apprenticeship law would place the labor organizations or apprenticeship committees in violation of the Ordinance if a rejected Caucasian apprentice applicant filed a complaint.

The cause of action here arose from a dispute between the employer and Local 26 on the one hand and two black members on the other claiming racial discrimination in fixing vacations. The plaintiff's argument here necessarily hypothesizes different facts, *viz.*, that white members might bring a reverse discrimination case for their exclusion from a presently nonexistent apprenticeship program. This issue thus rests on a speculative factual basis; it presupposes the creation of such an apprenticeship program, discrimination against Caucasians in furtherance of the state statutory objective, and the filing of a complaint by those Caucasians. This issue, based on hypothetical facts, is not ripe for declaratory judgment, and we do not deem it appropriate to issue a declaratory judgment as to this matter. *Port of Seattle v. State Util. & Transp. Comm'n,* 92 Wn.2d 789, 806, 597 P.2d 383 (1979).

Furthermore, the plaintiff does not allege any harm to it here arising by virtue of this particular feature of the

[2]Local 26 did not in its pleadings or argument in trial court assert this claimed conflict. It is first posed as argument in the brief of appellant.

Ordinance or of the apprenticeship statute. Local 26 makes no claim that it is subject to any complaints arising out of RCW 49.04.010 *et seq.* The rule has been stated in *State v. Lundquist,* 60 Wn.2d 397, 401, 374 P.2d 246 (1962):

> A person may not urge the unconstitutionality of an ordinance or statute unless he is harmfully affected by the particular feature of the ordinance or statute alleged to be an unreasonable exercise of the police power. A litigant who challenges the constitutionality of an ordinance must claim infringement of an interest peculiar and personal to himself, as distinguished from a cause of dissatisfaction with the general framework of the ordinance.

The union is not harmfully affected by this asserted hypothetical conflict. We do not consider this question of claimed conflict.

We therefore conclude that the subject matter of this controversy has not been preempted by the state legislation and that there is room for concurrent jurisdiction. There is no conflict between the law against discrimination and the Seattle Fair Employment Practices Ordinance. The Ordinance is a valid exercise of the City's police power pursuant to article 11, section 11 of the Washington State Constitution.

We affirm the judgment of dismissal.

SWANSON, A.C.J., and DORE, J., concur.

Reconsideration denied December 21, 1979.