IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| ROGER LEISHMAN,<br><br>Appellant,<br><br>v.<br><br>KATHRYN LEATHERS, NOAH PURCELL, JEFFREY RUPERT, NATHAN BAYS, JEFFREY GRANT, TIP WONHOFF, OFFICE OF THE GOVERNOR, OFFICE OF THE ATTORNEY GENERAL, and DEPARTMENT OF ENTERPRISE SERVICES,<br><br>Respondents. | No. 87141-2-I<br><br><br><br>UNPUBLISHED OPINION |

BOWMAN, A.C.J. — Roger Leishman sued Kathryn Leathers, Noah Purcell, Jeffrey Rupert, Nathan Bays, Jeffrey Grant, Tip Wonhoff, the Office of the Governor, the Office of the Attorney General (AGO), and the Department of Enterprise services (collectively Defendants) for violating the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW; negligence; negligent infliction of emotional distress (NIED); and outrage. Leishman alleged that the Defendants triggered his posttraumatic stress disorder (PTSD) by not promptly responding to his Public Records Act (PRA), chapter 42.56 RCW, requests and by using "[g]aslighting lawyer tactics" while defending against his PRA lawsuit.

The trial court dismissed Leishman's claims under CR 12(b)(6), and he appeals. We affirm.

FACTS

Leishman is an attorney licensed to practice in the state of Washington. In July 2015, Leishman began working for the AGO as chief legal advisor to Western Washington University. Shortly after starting the job, he began exhibiting "serious Body-Focused Repetitive behaviors (including trichotillomania), anxiety, bruxish, insomnia, impaired Executive Function, and other physical and mental symptoms." In November, Leishman's physician diagnosed him with "PTSD and serious codependency," stemming from his "traumatic experiences as a gay Mormon youth."

In January 2016, Leishman asked for workplace accommodations from the AGO. He requested "additional time to complete tasks when his Executive Function is impaired by substantial stress or triggers, and protection from the impact of interactions with individuals whose conduct has triggered significant PTSD symptoms." The AGO denied his accommodation request.

Leishman then filed a formal complaint with the AGO, alleging sexual orientation discrimination. On March 7, 2016, the AGO placed him on "home assignment" and hired Ogden Murphy Wallace (Ogden) to investigate. Based on Leishman's workplace performance and Odgen's report that no evidence supported his discrimination complaint, the AGO terminated Leishman's employment on June 1, 2016. *See Leishman v. Ogden Murphy Wallace, PLLC*, 196 Wn.2d 898, 901, 479 P.3d 688 (2021).

Leishman then sued the AGO. *Leishman*, 196 Wn.2d at 901. The parties settled, and Leishman released his claims against the state and its officers, agents, employees, agencies, and departments. *Id.* at 901-02. In May 2017, Leishman sued Ogden and its investigator. The trial court dismissed Leishman's lawsuit and our Supreme Court affirmed, holding that Washington's anti-SLAPP[1] statute barred his claims. *Id.* at 902, 911.

In July 2019 and again in February 2020, Leishman filed several ethics complaints against the AGO attorneys who coordinated the investigation with Ogden. *See Leishman v. Reynolds*, No. 57122-6-II, slip op. at 4-5 (Wash. Ct. App. Dec. 26, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2057122-6-II%20Unpublished%20Opinion.pdf. The head of the Washington State Executive Ethics Board, Kathryn Reynolds, refused to accept both sets of complaints because they did not meet the requirements for filing. *Id.* at 5-6. Leishman then petitioned for mandamus against Reynolds, seeking to compel her to accept his complaints. *Id.* at 2. The court dismissed the petition, and Division Two affirmed. *Id.* at 2, 14.

In April 2020, Leishman sued the AGO, various AGO agents and their spouses, Reynolds and her spouse, the Office of Risk Management, Western Washington University and its former president, and Ogden, listing 11 causes of action. *See Leishman v. Wash. Att'y Gen.'s Off.*, No. 2:20-CV-00861-RAJ, 2021 WL 1140262, at *2 (W.D. Wash. Mar. 25, 2021) (court order). Defendant Jeffery Grant served as counsel for the state and as the primary point of contact with

---

[1] Strategic lawsuit against public participation, RCW 4.24.510.

Leishman. Ultimately, the case was removed to federal court, which dismissed Leishman's civil conspiracy and misrepresentation claims. *Id.* at *2, *10.

In October 2020, Leishman e-mailed PRA requests to the Office of the Governor. *See Leishman v. Reynolds*, No. 58929-0-II, slip op. at 4 (Wash. Ct. App. Dec. 23, 2025) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2058929-0-II%20Unpublished%20Opinion.pdf. But the Office of the Governor did not receive the requests. *Id.* In November 2020, April 2021, and May 2021, Leishman e-mailed Grant and the governor's general counsel, Defendant Kathryn Leathers, referencing those requests. *Id.* at 4-5. Leathers and Grant denied receiving the e-mails. *Id.* Leishman claims he sent another e-mail to Leathers in September 2021 and attached the October 2020 records requests. *Id.* at 6. But the Governor's office again said there was no attachment. *Id.* In October 2021, Leishman successfully sent an e-mail with the attached records requests, and the Governor's Office responded to his requests. *Id.* at 6-7.

Leishman then sued the Office of the Governor, alleging violations of the PRA. *Leishman*, No. 58929-0-II, slip op. at 7. Grant was still representing the state, and the case proceeded to a bench trial. *Id.* at 6. At trial, Leathers testified about the exchange of e-mails and that the Office of the Governor did not receive Leishman's requests for documents until October 2021. *Id.* The trial court dismissed Leishman's claims, concluding that the Governor's Office did not violate the PRA when it responded to Leishman's requests in October 2021. *Id.* at 10. Division Two of this court agreed. *Id.* at 21.

On April 16, 2024, Leishman sued the Defendants in King County Superior Court, alleging violations of the WLAD, negligence, NEID, and outrage.[2] Specifically, Leishman claimed that Grant "neglected communications from Leishman," "failed to follow through on commitments he made to Leishman," "blamed Leishman for Defendants' neglect," and "gave false and conflicting explanations to Leishman, including false representations regarding delivery failures by the [s]tate's e[-]mail servers." Leishman also alleged Grant made "knowingly false" factual representations to the court about Leishman's e-mails. Leishman said he complained to Grant's supervisors but they deemed his complaints "frivolous" and refused to replace Grant, even though "[m]ultiple tribunals have recognized that Defendant Grant's conduct triggers Leishman's disability symptoms."

The State moved to dismiss Leishman's complaint under CR 12(b)(6). On June 28, 2024, the trial court heard oral argument. It granted the State's motion and dismissed Leishman's WLAD, negligence, NEID, and outrage claims with prejudice.[3] On August 19, 2024, the trial court entered final judgment under CR 54(b) in favor of the Defendants.

Leishman appeals.

---

[2] Again, Leishman also alleged that the Office of the Governor violated the PRA. The trial court transferred his PRA claim to Thurston County Superior Court. As a result, the PRA claims are not the subject of this appeal.

[3] On August 6, 2024, Leishman amended his complaint to allege two claims under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. section 12101, against only state agencies the Office of the Governor, the AGO, and the Department of Enterprise Services. The state removed the Title II claims to federal court. The court then dismissed the new claims. *Leishman v. Off. of the Governor*, No. 2:24-CV-01363-JNW, 2025 WL 2495063 (W.D. Wash. Aug. 29, 2025) (court order).

ANALYSIS

Leishman argues the trial court erred by dismissing his WLAD, negligence, NEID, and outrage claims under CR 12(b)(6). The Defendants argue that his claims fail as a matter of law. We agree with the Defendants.

We review a trial court's decision to dismiss a case under CR 12(b)(6) de novo. *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007). We will dismiss a complaint under CR 12(b)(6) if it fails to state a claim on which the court can grant relief, but we do so " 'sparingly and with care.' " *Tenore v. AT & T Wireless Servs.*, 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998) (quoting *Hoffer v. State*, 110 Wn.2d 415, 421, 755 P.2d 781 (1988)). Dismissal is appropriate only if no set of facts consistent with the complaint would entitle the plaintiff to relief. *Jackson v. Quality Loan Serv. Corp. of Wash.*, 186 Wn. App. 838, 843, 347 P.3d 487 (2015). We presume the facts in the complaint are true and reject the motion to dismiss if " '[a]ny hypothetical situation conceivably raised by the complaint . . . is legally sufficient to support plaintiff's claim.' " *Id.*[4] (quoting *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995)).

1. <u>WLAD</u>

Leishman argues the trial court erred by dismissing his WLAD claim. We disagree.

The WLAD prohibits discrimination based on disability in "any place of public resort, accommodation, assemblage, or amusement." RCW 49.60.030(1)(b), .215(1)(c). To show discrimination in a place of public

---

[4] Internal quotation marks omitted.

6

accommodation, the plaintiff must establish that (1) the plaintiff is a member of a protected class, (2) the defendant's establishment is a place of public accommodation, (3) the defendant discriminated against the plaintiff when it did not treat the plaintiff in a manner comparable to the treatment it provides to persons outside that class, and (4) the plaintiff's protected status was a substantial factor that caused the discrimination. *Floetling v. Grp. Health Coop.*, 192 Wn.2d 848, 853, 434 P.3d 39 (2019) (citing *Fell v. Spokane Transit Auth.,* 128 Wn.2d 618, 637, 911 P.2d 1319 (1996)).

In his complaint, Leishman alleged that the Office of the Governor failed to ensure his "equal participation in the accommodations, programs, services, and activities of the [s]tate" because it failed to take appropriate steps to ensure that its communications with him about his PRA requests were "as effective as their communications with others." He further alleged the Office of the Governor failed to "make reasonable modifications in their policies, practices, or procedures to avoid discrimination on the basis of disability." But Leishman misconstrues the nature of a WLAD public accommodations claim.

Under the WLAD, a place of accommodation need not provide extra services to persons with a disability if it does not deny full access to services already provided. *Commc'n Access Project v. Regal Cinemas, Inc.*, 173 Wn. App. 174, 189, 293 P.3d 413 (2013). And Leishman does not allege facts showing that the Office of the Governor denied him access to their services based on his disability. Indeed, Division Two of our court determined that the Office of the Governor timely and adequately responded to Leishman's PRA

7

requests.  *Leishman*, No. 58929-0-II, slip op. at 10, 21.  As a result, his WLAD claim fails.

The trial court did not err by dismissing Leishman's WLAD claim.[5]

2.  Negligence

Leishman argues the trial court erred by dismissing his negligence claim. We disagree.

To establish negligence, a plaintiff must show (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause.  *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).  When assessing a negligence claim, "the threshold question is whether a defendant owes a duty of care to the injured plaintiff."  *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 474, 951 P.2d 749 (1998).  The existence of a legal duty is a question of law and depends on mixed considerations of logic, common sense, justice, policy, and precedent.  *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 67, 124 P.3d 283 (2005).  In general, courts will find a duty where reasonable people would recognize it and agree that it exists.  *Tallariti v. Kildare*, 63 Wn. App. 453, 456, 820 P.2d 952 (1991).

Citing *Mancini v. City of Tacoma*, 196 Wn.2d 864, 879, 479 P.2d 656 (2021),[6] Leishman argues that the Defendants had a duty to refrain from causing " 'foreseeable harm in interactions' " with him.  And the Defendants' "gaslighting"

---

[5] Because we conclude that Leishman fails to show discrimination, we need not address the Defendants' argument that the Office of the Governor is not a place of accommodation for the purpose of responding to PRA requests.

[6] Quoting *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 550, 442 P.3d 608 (2019).

behavior throughout his PRA lawsuit breached that duty. But the litigation privilege protects participants in a judicial proceeding against civil liability for statements made during litigation so long as the statements relate to the litigation. *Tavaglione v. Dehkhoda & Qadri, P.C.*, 34 Wn. App. 2d 515, 520, 568 P.3d 1158 (2025). And the privilege includes the statements of attorneys. *Id.* at 521. Here, the alleged communications identified by Leishman as giving rise to his negligence claim occurred during and were related to the PRA litigation.

The trial court did not err by dismissing Leishman's negligence claim.[7]

3. Outrage

Finally, Leishman alleges the trial court erred by dismissing his outrage claim. Again, we disagree.

A claim for outrage, or intentional infliction of emotional distress,[8] requires proof of " '(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.' " *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 840, 355

---

[7] Leishman also claimed that the Defendants breached their duty to avoid causing him foreseeable harm when they failed to timely respond to his PRA requests. But even assuming the Defendants owed Leishman a duty in that context, Division Two of our court determined that the Defendants complied with their PRA obligations in response to Leishman's requests. *Leishman*, No. 58929-0-II, slip op. at 10, 21. So, Leishman fails to allege facts supporting a breach of that duty. And as much as Leishman alleges the court erred by dismissing his NEID claim, that assertion also rests on alleged negligent acts arising from conduct during litigation. So, Leishman's NEID claim fails for the same reason as his negligence claim.

[8] *See Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 792, 336 P.3d 1142 (2014).

P.3d 1100 (2015)[9] (quoting *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 792, 336 P.3d 1142 (2014)).  An outrage claim must allege conduct " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "  *Id.*[10] (quoting *Lyons*, 181 Wn.2d at 792).

Leishman alleged in his complaint that the Defendants outrageously "neglected [his] communications," "failed to follow through on commitments," "blamed [him] for [their] neglect," and gave "false representations regarding delivery failures by the [s]tate's e[-]mail servers" when he requested records under the PRA.  But, as discussed above, Division Two of our court has determined that the Defendants properly responded to Leishman's PRA requests.  *Leishman*, No. 58929-0-II, slip op. at 10, 21.  So, Leishman fails to show that their conduct was atrocious and utterly intolerable.

Leishman also alleged that the Defendants engaged in outrageous conduct by making "knowingly false" factual representations to the court when litigating his PRA case.  But again, even assuming Leishman's allegations are true, those statements are covered by the litigation privilege as discussed above.  As a result, Leishman's fails to allege facts sufficient to support his intentional infliction of emotional distress claim.

The trial court did not err by dismissing Leishman's outrage claim.

---

[9] Internal quotation marks omitted.

[10] Internal quotation marks omitted.

4. Attorney Fees

Leishman requests attorney fees on appeal under RCW 49.60.030(2) and RAP 181.1. Under RAP 18.1(a), we may award attorney fees on appeal if "applicable law grants to a party the right to recover reasonable attorney fees." And under RCW 49.60.030(2),

> [a]ny person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter.

Because Leishman is not the prevailing party, he is not entitled to attorney fees.

5. Sanctions

The Defendants asks us to impose sanctions, including attorney fees, under RAP 18.9(a) because Leishman's appeal is frivolous.

Under RAP 18.9(a), we may order a party who files a frivolous appeal to pay sanctions. An appeal is frivolous if it "presents no debatable issues upon which reasonable minds might differ" and "is so devoid of merit that there is no possibility of reversal." *Lutz Tile, Inc. v. Krech,* 136 Wn. App. 899, 906, 151 P.3d 219 (2007). While Leishman's suit lacks merit, we decline to say that it is frivolous. We deny the Defendants' request for sanctions.

In sum, because Leishman fails to plead facts sufficient to support his claims, we affirm the trial court's CR 12(b)(6) order dismissing those claims with

prejudice.[11]  And we deny both parties' requests for fees.

_____, ACJ

WE CONCUR:

_____          Birk, J.

_____

---

[11] Because we conclude that Leishman's claims fail as a matter of law, we decline to address the Defendants' arguments that Leishman's claims are barred by issue or claim preclusion.